IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BILLY EARL | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 18-cv-8279 |
| v. | ) | |
| | ) | |
| JEWEL FOOD STORES, INC., and | ) | Jury Trial Demanded |
| HIGHWAY DRIVERS, DOCKMEN, | ) | |
| SPOTTERS, RAMPMEN, MEAT, | ) | |
| PACKING HOUSE, AND ALLIED | ) | |
| PRODUCTS DRIVERS AND | ) | |
| HELPERS, OFFICE WORKERS AND | ) | |
| MISCELLANEOUS EMPLOYEES | ) | |
| LOCAL UNION NO. 710 | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiff, Billy Earl ("Earl" or "Plaintiff"), complains of Defendants Jewel Food Stores, Inc ("Jewel") and Highway Drivers, Dockmen, Spotters, Rampmen, Meat, Packing House, and Allied Products Drivers and Helpers, Office Workers and Miscellaneous Employees Local Union No. 710 Affiliated with the International Brotherhood of Teamsters ("Local 710" or "Union") (collectively Defendants), and seeks appropriate judicial relief, including attorneys' fees and costs.

### Jurisdiction

1. Plaintiff raises federal claims under 29 U.S.C. § 185, 29 U.S.C. § 1166, 42 U.S.C. § 1981 and 42 U.S.C. §§ 2000e, *et. seq.* Jurisdiction is thus proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Supplemental jurisdiction is proper under 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

### The Parties

3. Jewel operates a chain of super markets in the United States. Its principal place of business is in Boise, Idaho. At relevant times, Jewel operated warehouses located in Melrose Park, Illinois.

1

4.  Local 710 is the sole and exclusive bargaining agent of Jewel employees engaged in warehousing operations at Jewel's warehouses located in Melrose Park, Illinois.

5.  Earl is an African American male who resides in Cook County, Illinois. Earl was employed in various roles by Jewel from approximately September 1988 until July 7, 2017.

6.  Earl is and has been a member of Local 710 in good standing since 1988. Earl's highest level of education is a high school diploma. Earl was born in 1961.

**Exhaustion of Administrative Remedies**

7.  On April 3, 2018, Earl timely filed a charge against Jewel with the Equal Employment Opportunity Commission ("EEOC"). Earl incorporates the charge by reference to this Complaint.

8.  On April 3, 2018, Earl timely filed a charge against Local 710 with the EEOC. Earl incorporates the charge by reference to this Complaint.

9.  On or about September 24, 2018, the EEOC issued Earl a Notice of Right to Sue letter regarding his charge directed at Jewel. The letter is attached to this Complaint.

**Background Facts**

10. In his most recent role at Jewel, Earl worked in the Maintenance and Sanitation Department as a Recoup Worker in Melrose Park, Illinois. Stephen Cohen ("Cohen"), a Caucasian male, was the superintendent of the warehouse building where Earl worked.

11. At relevant times, Earl was directly supervised by different other individuals who all reported to Cohen. Earl's most recent supervisor was William Knedler ("Knedler" or "Bill Knedler"), a Caucasian male.

12. At relevant times, Earl's employment was governed by one or more signed and enforceable collective bargaining agreements between Local 710 and Jewel ("Union Agreements"). The most recent agreement became effective on March 7, 2016 ("Union Agreement").

13. Sometime around 2016 and into 2017, Cohen repeatedly targeted Earl with comments that

2

were intended to demean or harass Earl in the work place. For example, Cohen regularly falsely accused Earl of sleeping on the job, being lazy and not doing any work, and eating while working. Cohen did not direct similar comments to non-African American employees, such as Jose, who was on Earl's team.

14. Cohen knew that his comments would cause Earl distress because they were false, and they embodied negative generalizations and stereotypes about African Americans in the United States culture. Cohen intended his comments to cause Earl distress.

15. In addition, even though Jewel employees were allowed to briefly leave the warehouse five minutes before their shifts ended to start their cars during the winter, Cohen and another Jewel supervisor, Fred Casey ("Casey"), a Caucasian male, admonished Earl when Earl did so. Cohen and Casey did not admonish non-African American employees who did so.

16. Sometime around 2016 into 2017, Earl's union representatives warned him that Knedler, Cohen and other Jewel superintendents and managers, including Casey, were determined to force him out of his employment at Jewel. Casey repeatedly asked Jewel managers during meetings when they would get rid of Earl. Casey did not make similar inquiries about non-African American employees.

17. Sometime around 2015 or 2016, Jewel maintained a system of speakers in Earl's work area that emitted loud sound during work hours. When Earl tried to turn down the volume of sound from the speakers, Knedler suspended him without pay even though Knedler's manager at the time requested that he let it go. Earl later developed ear ailments from the loud sounds.

18. At relevant times, Earl felt and believed that Cohen, Casey and other Jewel supervisors and managers discriminated against him because of his race, African American. Earl reported the discrimination to Local 710 and Jewel.

19. Even though Jewel and Local 710 received Earl's discrimination complaints, they failed to investigate or take any action about them.

20. According to the Union Agreement, Jewel could not terminate Earl's employment without just cause. Similarly, Jewel could not discipline Earl without just cause.

21. According to the Union Agreement, union members had the right to take an extra day off, if a holiday fell within the employee's vacation period, and the employee properly notified Jewel in advance of his intention to take the day off.

22. At relevant times, Jewel employees used a standard form to select vacation and personal holiday days that they wished to take off. Earl selected vacation and holiday picks by filling out the form at all relevant times. Earl regularly notified Jewel of his intent to take off the day after his last vacation day if a holiday fell within his vacation period by indicating "Ex. Day" next to each relevant vacation week that he requested.

23. In 2016, Earl was scheduled to be on vacation during the week that ended July 1, 2016. Since July 4, 2016 was a holiday, Earl notified Jewel that he intended to take July 5, 2016 off by marking "Ex. Day" on his vacation and personal day request form next to the week ending July 1, 2016. Upon information and belief, Jewel denied Earl's request to take July 5, 2016 off, but approved similar requests for other non-African American employees.

24. Unaware that his request had been denied, Earl took July 5, 2016 off. Jewel imposed discipline on Earl by issuing him a warning because he did not call the company to advise that he would be taking July 5, 2016 off.

25. Upon information and belief, Jewel did not discipline non-African American employees who did not show up for work because they mistakenly believed that they were on approved leave, but they were in fact not on approved leave.

4

26. On or about February 1, 2017, Earl selected his vacation and personal holiday picks for the 2017 calendar year by filling out Jewel's standard vacation and personal holiday picks form. Earl elected to take vacation during the week ending June 2, 2017. Since May 29, 2017 was a holiday, Earl also elected to take off June 5, 2017 by marking "Ex. Day" on his vacation and personal day request form for the week ending June 2, 2017.

27. Earl gave his vacation request form to a Jewel manager, who took it upstairs to Knedler's office.

28. On or about February 6, 2017, Knedler approved Earl's vacation for the week ending June 2, 2017 by indicating "OK" next to the relevant line on the form which also contained Earl's "Ex. Day" designation to inform Jewel that he also intended to take June 5, 2017 off.

29. On or about February 6, 2017, Dan Carol ("Carol"), a Caucasian male Jewel manager, gave Earl 3 photocopies of his vacation request form, signed by Knedler.

30. The 3 photocopies that Carol gave Earl had the same information on both sides of each paper and were marked "OK" next to the week ending June 2, 2017 that Earl had requested off. They also contained Earl's "Ex. Day" designation next to the week ending June 2, 2017, leading Earl to believe that his vacation request for the week ending June 2, 2017 was approved, and that he was also entitled to take June 5, 2017 off.

31. Knedler denied Earl's requests to take vacation for the weeks ending November 24, 2017 and December 29, 2017. Knedler also denied Earl's request to take July 3, 2017 off. Knedler designated the denials by indicating "No" next to each date that Earl had requested.

32. At relevant times, Jewel employees whose vacation requests were denied could request the same days off again by filling out the standard vacation request form.

33. Sometime after February 6, 2017, Earl filled out another form to request November 24,

5

2017 and December 29, 2017 off. Earl attempted to personally present the form to Knedler. Knedler verbally denied Earl's requests before Earl could give him the form.

34. On or about February 10, 2017, Earl filled out another form to request November 16, 17, 20, 21 and 22 of 2017; and December 21, 22, 27, 28 and 29 of 2017 off. Earl gave the form to a manager to give to Knedler. On or about February 14, 2017, Knedler approved Earl's requests.

35. Earl did not go to work on June 5, 2017 because he believed he was on an approved leave, as was indicated on copies of his vacation request form that Carol gave him on February 6, 2017.

36. On Tuesday, June 6, 2017, Jewel held a meeting with Earl to discuss his absence on June 5, 2017. Jewel characterized Earl's absence as "No Call/No Show." At the meeting were: Earl; Gary Michelini, a Jewel supervisor; Al Wiegel, a Local 710 agent; and Chuck Blanton, a Jewel building superintendent. Earl denied Jewel's characterization of his absence.

37. On June 16, 2017, Jewel held another meeting with Earl. At the meeting were: Jimmy Bradford ("Bradford"), a Local 710 representative; Chris Herrick ("Herrick") and Knedler, Jewel employees. Knedler falsely claimed at the meeting that he had not authorized Earl to take June 5, 2017 off. Earl produced a copy of his approved vacation request form that Carol had given him on or about February 6, 2017, to show that Knedler's claim was false.

38. In response, Knedler falsely claimed that the "original" document in his office did not match Earl's copy.

39. After viewing the copy of the document in Knedler's office, Bradford informed Earl that parts of it appeared to have been erased using a correction fluid or similar material to remove Earl's designation of "Ex. Day," which he had used to indicate that he was requesting June 5, 2017 off, since it was the day after June 2, 2017, which was the last day of his approved vacation period.

40. On or about June 29, 2017, Jewel suspended Earl without pay and falsely accused him of

falsifying a company record. Earl did not have access to Jewel's records in Knedler's office.

41. On July 7, 2017, Jewel terminated Earl's employment. Local 710 later reluctantly filed a grievance to contest Earl's termination, which was forwarded for arbitration almost a year later.

42. On or about July 13, 2018, Brian Clauss ("Clauss") presided over the arbitration hearing for the grievance, held in Melrose Park, Illinois. Attorney Laurence Goodman ("Goodman") represented Local 710. Earl fully cooperated with Goodman and provided all factual information disclosed in this Complaint, and more.

43. On or about July 13, 2018, Goodman showed Earl copies of his vacation application forms for 2013, 2014 and 2015. These forms reflected that Earl had consistently elected to take off the day after his last vacation day, if one of his vacation periods fell within a holiday, by marking "Ex. Day" next to the appropriate vacation period.

44. On or about September 26, 2018, Clauss issued a decision ("Arbitration Decision") denying Local 710's grievance regarding Earl's termination. Clauss incorrectly concluded that the accurate copy of the vacation approval form is the altered copy that had been produced by Knedler, and not the copies that Carol had given Earl on or about February 6, 2017.

45. On or about November 28, 2018, Local 710 mailed a copy of the Arbitration Decision to Earl by certified mail. Local 710 included a letter informing Earl that there was no further action it could take on the case. Earl received the decision and Local 710 letter on or about December 1, 2018.

46. The Arbitration Decision ascribes statements to alleged witnesses who were not present and did not testify at the hearing. For example, it cites conversations that Carol allegedly had with Earl, but Carol was not present at the hearing.

47. The Arbitration Decision ascribes statements to Earl that he did not make. For example, it

7

states that Earl believed that Knedler might have given him verbal permission to take June 5, 2017

off, but Earl did not testify that Knedler gave him verbal permission.

## COUNT I
## BREACH OF DUTY OF FAIR REPRESENTATION AND BREACH OF COLLECTIVE BARGAINING AGREEMENT
## AGAINST LOCAL 710 AND JEWEL

48. Plaintiff re-alleges and re-asserts paragraphs 1-47 as if fully set forth herein.

49. Earl asserts his claims in this count against both Defendants pursuant to Section 301 of the

Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *et. seq*.

50. At relevant times herein, Earl had meritorious grievances against Jewel for wrongful

termination without just cause, and discrimination.

51. Jewel breached material terms of the Union Agreement by discriminating against Earl and

terminating Earl's employment without just cause.

52. Local 710 breached its duty of fair representation to Earl by failing to grieve his claims for

discrimination.

53. Local 710 breached its duty of fair representation to Earl by failing to adequately

investigate, process, present and argue Earl's grievance related to his employment termination,

and handled his grievance in a perfunctory manner.

54. Goodman failed to interview Carol and to present him as a witness, or, to otherwise

examine the original document from which Carol made the 3 copies of documents that he gave

Earl on February 6, 2017.

55. Goodman failed to present Earl's prior vacation request forms to corroborate Earl's

testimony.

56. Local 710 failed to hire a documents expert to disprove Jewel's false claims that Earl had

falsified company records.

8

57. Goodman failed to argue that it was implausible for Earl to falsify Jewel's records because he did not have access to Knedler's office.

58. Goodman failed to examine the possibility that the document that Knedler claimed to be original was altered with a correction fluid or similar material or erased to remove Earl's "Ex. Day" designations.

59. The charges that Jewel asserted against Earl were false. The falsity of the charges against Earl could have been discovered with a minimum investigation.

60. Local 710 made no effort to ascertain the truth of the charges that Jewel asserted against Earl by interviewing and presenting witnesses for direct and cross-examination, including Carol, Casey and Cohen.

61. Local 710 breached its duty of fair representation to Earl by failing to provide him with a fair and impartial hearing for his grievance related to his employment termination.

62. Local 710's conduct was arbitrary, discriminatory and in bad faith.

63. As a result of Defendants' conduct, Earl's employment was terminated. Earl has been unable to find a job, and has lost wages, health care insurance and retirement benefits.

64. Defendants' actions against Earl caused him to suffer severe emotional distress, humiliation, depression, anxiety, pain and suffering, lost wages and benefits, future pecuniary losses, inconvenience and loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays for this Court to enter judgment on his behalf and against Defendants Jewel and Local 710 providing:

A.  Defendant Local 710 breached its duty of fair representation to Earl;

B.  Defendant Jewel breached the Union Agreement by terminating Earl's employment

without just cause;

C.  The Arbitration Decision was procured by undue means;

D.  Injunction to prevent implementation of arbitrator Brian Clauss' September 26, 2018 decision or Arbitration Decision;

E.  All wages and benefits Plaintiff would have received but for Defendants' breach of their duties under the Union Agreement and 29 U.S.C. § 185;

F.  Reinstatement to his former position, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

G.  Attorneys' fees and costs;

H.  Pre-judgment interest;

I.  Post-judgment interest; and

J.  Such other and further relief as the Court deems appropriate.

## COUNT II
## RACE DISCRIMINATION
## AGAINST JEWEL

65. Plaintiff re-alleges and re-asserts paragraphs 1-47 as if fully set forth herein.

66. At relevant times herein, Jewel employed more than 15 people. Therefore, it is an employer within the meaning of 42 U.S.C. § 2000e(b).

67. Jewel is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h).

68. Jewel employed Cohen, Knedler and Casey at all material times. Jewel is responsible for the acts of Cohen, Knedler and Casey because they were acting within the scope of their employment when they directly, or through their subordinates or allies, subjected Earl to acts of discrimination and harassment in the work place.

69. Earl was subjected to unequal, discriminatory treatment, harassment and a hostile work

10

environment by Jewel in part because of his race.

70. Other similarly situated Caucasian or non-African American employees were not subjected to the same discriminatory, harassing, and/or hostile conduct.

71. Jewel treated other similarly situated Caucasian or non-African American employees more favorably than it treated Earl.

72. Jewel's conduct interfered with the terms and conditions of Earl's employment.

73. Jewel's conduct was severe.

74. Jewel's conduct was pervasive.

75. Jewel's conduct was unwelcome.

76. Jewel discriminated against Earl with malice and/or reckless indifference to his federally protected rights.

77. Jewel's actions in engaging in and permitting race-based harassment against Earl caused him to suffer severe emotional distress, humiliation, depression, anxiety, pain and suffering, lost wages and benefits, future pecuniary losses, inconvenience and loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays for this Court to enter judgment on his behalf and against Defendant Jewel providing:

A. Defendant has discriminated against Plaintiff in violation of Title VII;

B. All wages and benefits Plaintiff would have received but for the unlawful employment practices;

C. Reinstatement to his former position, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

D. Compensatory and punitive damages;

E. Attorneys' fees and costs;

F. Pre-judgment interest;

G. Post-judgment interest; and

H. Such other and further relief as the Court deems appropriate.

**COUNT III**
**SECTION 1981 RACE DISCRIMINATION**
**AGAINST JEWEL AND LOCAL 710**

78. Plaintiff re-alleges and re-asserts paragraphs 1-47 and 49-60 as if fully set forth herein.

79. Jewel employed Cohen, Casey, Knedler and other employees who targeted Earl at relevant times with unlawful conduct. Jewel is responsible for the acts of Cohen, Casey, Knedler and other employees or agents who were acting within the scope of their employment.

80. Cohen, Casey, Knedler and other Jewel employees or agents directly participated in the conduct constituting a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 against Earl.

81. During Earl's employment, he was a member of a union, Local 710, that had a collective bargaining agreement with Jewel that granted him certain rights, including an annual salary, benefits and job protection from unfair termination, or termination without just cause.

82. Local 710 was aware of Jewel's discriminatory practices, but failed to grieve them, and therefore, in effect, engaged in the same discrimination against Earl.

83. Local 710 discriminated against Earl in that it failed to adequately investigate, process, present and argue Earl's termination grievance; it failed to adequately investigate, process, present and argue Earl's discrimination grievance; and it failed to provide Earl with a fair and impartial hearing regarding his termination grievance.

84. Earl was discriminated against, harassed, and subjected to a hostile work environment by Defendants because of his race, in violation of the rights afforded him by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

12

85. Defendants intentionally deprived Earl of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual relationship, in violation of U.S.C. § 1981.

86. Other similarly situated Caucasian or non-African American employees were not subjected to the same discriminatory, harassing, or hostile conduct.

87. Defendants treated other similarly situated Caucasian or non-African American employees more favorably than Earl.

88. The conduct of Defendants was severe.

89. The conduct of Defendants was pervasive.

90. The conduct of Defendants was unwelcome.

91. Defendants' conduct impaired Plaintiff's ability to fully enjoy the benefits of his bargain with Local 710 and Jewel.

92. Jewel employees or agents personally interfered in Earl's performance by denying Plaintiff his wages and continuing employment opportunities, and subjecting him to a hostile work environment.

93. Local 710 employees or agents personally interfered in Earl's performance by failing to grieve his complaints for discrimination and a hostile work environment, and failing to fairly and adequately grieve his wrongful termination.

94. Defendants' conduct had the purpose and/or effect of terminating Earl's employment opportunities, and preventing him from enjoying the full benefits of his union membership.

95. As a result of Defendants' discrimination in violation of Section 1981, Earl has been denied employment opportunities and other contractual benefits providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief.

96. Defendants acted with malice or reckless indifference to the federally protected rights of Earl.

97. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff suffered severe emotional distress, humiliation, depression, anxiety, pain and suffering, lost wages and benefits, future pecuniary losses, inconvenience and loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays that this court enter judgment on his behalf and against Defendants Jewel and Local 710 providing:

A. Defendants have discriminated against Plaintiff in violation of § 1981;

B. All wages and benefits Plaintiff would have received but for the violation of § 1981;

C. Reinstatement to his former position, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

D. Compensatory and punitive damages;

E. Attorneys' fees and costs;

F. Pre-judgment interest;

G. Post-judgment interest; and

H. Such other and further relief as the Court deems appropriate.

## COUNT IV
## SECTION 1981 RETALIATION
## AGAINST JEWEL AND LOCAL 710

98. Plaintiff re-alleges and re-asserts paragraphs 1-47 and 49-60 as if fully set forth herein.

99. Jewel retaliated against Plaintiff, by terminating his employment without just cause and falsely accusing him of forgery, a felony, for having engaged in one or more protected activities.

100.      Jewel acted with malice or reckless indifference to the federally protected rights of Earl.

101.    Local 710 retaliated against Plaintiff, by failing to investigate the circumstances of his termination, failing to present materially helpful witnesses like Carol and other evidence at the arbitration hearing regarding Plaintiff's termination, and failing to make any arguments challenging Jewel's false assertions at the arbitration hearing, for having engaged in one or more protected activities.

102.    Local 710 acted with malice or reckless indifference to the federally protected rights of Earl.

103.    As a result of Jewel and Local 710's retaliation, in violation of 42 U.S.C. § 1981, Earl has suffered severe emotional distress, humiliation, depression, anxiety, pain and suffering, lost wages and benefits, future pecuniary losses, inconvenience and loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays that this court enter judgment on his behalf and against Jewel and Local 710 providing:

A.  Jewel has retaliated against Plaintiff in violation of § 1981;

B.  Local 710 has retaliated against Plaintiff in violation of § 1981;

C.  All wages and benefits Plaintiff would have received but for the violation of § 1981;

D.  Reinstatement to his former position, or in lieu of reinstatement, an order of front pay and benefits for a reasonable period of time;

E.  Compensatory and punitive damages;

F.  Attorneys' fees and costs;

G.  Pre-judgment interest;

H.  Post-judgment interest; and

I.  Such other and further relief as the Court deems appropriate.

15

**COUNT V**
**VIOLATION OF 29 U.S.C. § 1166**
**AGAINST JEWEL**

104.     Plaintiff re-alleges and re-asserts paragraphs 1-47 as if fully set forth herein.

105.     Jewel employed more than 20 employees on any given calendar day at all relevant times.

106.     During Earl's employment, Jewel sponsored and administered a group health insurance plan. Earl participated in the group health insurance plan at all relevant times to obtain health insurance for himself and his dependents.

107.     Jewel terminated Earl's participation in the group health insurance plan on or about July 7, 2017, when it terminated his employment. Earl's employment termination was a qualifying event under 29 U.S.C. § 1163.

108.     Jewel never gave Earl statutory notices required by 29 U.S.C. § 1166 ("COBRA") so that he could elect to continue his health insurance benefits.

109.     As a direct or proximate result of Jewel's conduct in violation of COBRA requirements, Earl suffered special damages, including loss of insurance coverage, and out of pocket expenses for health care needs.

**WHEREFORE**, Plaintiff prays that this court enter judgment on his behalf and against Jewel providing:

A.  Jewel violated Earl's rights under 29 U.S.C. § 1166;

B.  Actual, compensatory and punitive damages;

C.  Pre-judgment interest;

D.  Post-judgment interest; and

E.  Such other and further relief as the Court deems appropriate.

16

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST JEWEL

110.     Plaintiff re-alleges and re-asserts paragraphs 1-47 as if fully set forth herein.

111.     On or about July 7, 2017, Knedler, a Jewel employee, while working within the scope of his employment, intentionally published a letter to more than five of Earl's co-workers containing false statements that suggested that Earl had committed the felony of forgery by altering company documents and lied about the status of his vacation request for June 5, 2017.

112.     Many of the co-workers that Knedler directed the letter to were not reasonably entitled to the letter.

113.     The letter contained other false statements about Earl.

114.     In the letter, Knedler stated that "Earl produced a document that did not match the original document used to select vacation and personal days." Knedler's statement was false.

115.     In the letter, Knedler stated that he "had not authorized Billy Earl to take Monday, June 5, 2017 as an extra day." Knedler's statement was false.

116.     Under Illinois law, forgery is a felony.

117.     The statements in Knedler's letter imputed upon Earl an inability to perform or want of integrity in performing his employment duties.

118.     The statements in Knedler's letter imputed upon Earl a lack of ability to work as a professional and prejudiced him in his profession.

119.     Knedler's conduct as described in this complaint was extreme and outrageous.

120.     Knedler intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress upon Earl.

121.     Knedler's conduct did cause Earl to suffer severe emotional distress, including anxiety caused by the threat of losing a job that he had held for nearly 30 years, and possibly being

arrested and prosecuted on false forgery charges.

122.    As a result of the statements in Knedler's letter, Jewel terminated Earl's employment without just cause, and Local 710 failed to effectively grieve his termination in part because it did not present any necessary witnesses.

123.    As a result of the statements in Knedler's letter, Jewel has not re-hired Earl.

124.    As a result of the conduct of Knedler, a Jewel employee, Earl has suffered severe emotional distress, humiliation, depression, anxiety, pain and suffering, lost wages and benefits, future pecuniary losses, inconvenience and loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays that this court enter judgment on his behalf and against Jewel providing:

A.  Jewel is liable to Plaintiff for intentionally inflicting emotional distress upon him;

B.  Actual, compensatory and punitive damages;

C.  Pre-judgment interest;

D.  Post-judgment interest; and

E.  Such other and further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY
PURSUANT TO RULE 38(B) OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

Respectfully Submitted

/s/ Eric Onyango
Eric Onyango
Prime Legal, LLC
222 North Columbus Drive #1507
Chicago, IL 60601
Counsel for Plaintiff

## VERIFICATION

I, Billy Earl, am the Plaintiff in this case. I have read the allegations in this Complaint, and am familiar with its contents. I declare under penalty of perjury under the laws of the United States of America, that the factual statements contained in this Complaint are true and correct to the best of my belief or personal knowledge, as my signature below indicates.

Billy Earl

Dated: December 17, 2018

19

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | | | |
|---|---|---|---|
| To: | **Billy Earl**<br>**1606 N. Lockwood**<br>**Chicago, IL 60639** | From: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |

|  | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2018-14261 | **Irma Quintero-Bueno,**<br>**Investigator** | **(312) 869-8059** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

| | |
|---|---|
| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☒ | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Julianne Bowman,**
**District Director**

9/24/18

*(Date Mailed)*

Enclosures(s)

cc:  **JEWEL FOOD**
**c/o Jessica Kong, Esq.**
**Counsel**
**150 Pierce Road**
**Itasca, IL 60143**