UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BILLY EARL**, | |
| Plaintiff, | Case No. 18-cv-8279 |
| v. | Judge Charles P. Kocoras |
| **JEWEL FOOD STORES, INC., and HIGHWAY DRIVERS, DOCKMEN, SPOTTERS, RAMPMEN, MEAT, PACKING HOUSE, AND ALLIED PRODUCTS DRIVERS AND HELPERS, OFFICE WORKERS AND MISCELLANEOUS EMPLOYEES LOCAL UNION NO. 710,** | Magistrate Judge Sheila Finnegan |
| Defendants. | |

**DEFENDANT JEWEL FOOD STORES, INC.'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant Jewel Food Stores, Inc. ("Jewel"), by and through its attorneys, hereby submits its Reply in further support of its Partial Motion to Dismiss Plaintiff's Amended Complaint ("Jewel's Motion") [Doc No. 36].

**I.      INTRODUCTION**

Plaintiff Billy Earl's ("Plaintiff") Response to Jewel's Motion (the "Response") [Doc. No. 43] fails to refute any of Jewel's arguments for dismissal of his claims in Counts I-III, VI, VIII, and IX of the Amended Complaint [Doc. No. 35].  Plaintiff failed to properly exhaust his Title VII racial harassment claim (Count II) and for this reason alone the claim should be dismissed.  Beyond this, though, Plaintiff does not allege that he suffered any racially motivated conduct sufficiently severe or pervasive so as to create an abusive working environment and give

rise to a viable racial harassment claim (Counts II-III). Any age discrimination or retaliation claims (Counts VIII-IX) based on Plaintiff's July 7, 2017 termination are time-barred; to the extent those claims are based on a "failure to rehire," they fail as well because Plaintiff concedes he never reapplied for a position with Jewel or asked for reinstatement. Additionally, Plaintiff's allegations supporting his intentional infliction of emotional distress claim (Count VI) are nowhere near the level of "truly extreme and outrageous" conduct that would give rise to a viable claim under Illinois law. Finally, Plaintiff's hybrid Section 301 claim (Count I) is poorly plead against both the Union and Jewel. For these reasons, explained further in detail below, and for the reasons set forth in Jewel's moving papers, the Court should grant Jewel's Motion in its entirety.

## II. RELEVANT LEGAL STANDARD

Plaintiff misapprehends the correct legal standard for a motion to dismiss based on failure to state a claim upon which relief can be granted. The key inquiry for the Court is whether Plaintiff's claims are plausible on the face of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (Doc. No. 37, Jewel's Memorandum ["Jewel's Memo."] p. 4). While a complaint need not contain "every fact," it must contain enough facts "to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal may also be warranted when the plaintiff pleads himself out of court. *See, e.g.*, *Edwards v. Johnson*, 198 F. Supp. 3d 874, 879-80 (N.D. Ill. 2016) (Kocoras, J.) (the plaintiff's complaint may reveal that claims are time-barred).

Certain claims in Counts I-III, VI, VIII, and IX of Plaintiff's Amended Complaint are factually and legally deficient under this standard and, consequently, do not survive scrutiny under Federal Rule of Civil Procedure 12(b)(6).

### III. PLAINTIFF'S PROCEDURAL OBJECTIONS TO JEWEL'S MOTION LACK MERIT

As a preliminary matter, Plaintiff's "object[ion]" to the format of Jewel's [M]otion falls flat. (Doc. No. 43, Response by Plaintiff in Opposition to Defendant Jewel Food Stores, Inc.'s Partial Motion to Dismiss ["Pl.'s Resp."] p. 2). He first argues that Jewel should not have addressed Plaintiff's "background facts" (presumably paragraphs 1-54 of the Amended Complaint), in its Motion, despite that in each and every one of Plaintiff's counts he "re-alleges and re-asserts paragraphs 1-54 as if fully set forth herein." (Doc. No. 35, Amended Complaint ["Amnd. Compl."] ¶¶ 55, 72, 85, 105, 111, 117, 132, 142, 153). That Jewel should not have addressed these "background facts" when attacking claims in which they were "re-allege[d] and reassert[ed]" is nonsensical.

Plaintiff's "Motion to Exclude" Jewel's exhibits is equally unfounded. (*See* Pl.'s Resp. p. 2). Courts in the Seventh Circuit have consistently held that documents which are referred to in the complaint and are central to plaintiff's claims may be considered on a Rule 12(b)(6) motion to dismiss without converting it into one for summary judgment. (Jewel's Memo fn.2-3 (citing cases)). Even one of the cases cited in Plaintiff's Response reiterates this principle. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 fn.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.").

Finally, Jewel's Motion is not premature. Courts in the Seventh Circuit routinely dismiss Title VII and ADEA claims at the outset of the case when it is apparent from the pleadings that a plaintiff's claims were not properly exhausted with the EEOC or are time-barred. *See, e.g.*, *Edwards v. Johnson*, 198 F. Supp. 3d 874, 879-80 (N.D. Ill. 2016) (Kocoras, J.) (granting motion

3

to dismiss on Title VII claim because it was time-barred); *Jones v. Chi. Bd. of Educ.*, No. 11 C 8326, 2013 WL 1499001, at *3 (N.D. Ill. Apr. 10, 2013) (Kocoras, J.) (granting motion to dismiss on ADEA and ADA claims as time-barred); *Fragale v. Village of Lake Villa*, No. 15-C-6294, 2016 WL 308109, at *2 (N.D. Ill. 2016) (granting partial motion to dismiss certain ADEA claims as time-barred and Title VII and ADA claims for failure to exhaust administrative remedies); *Novotny v. Plexus Corp.*, No. 13-cv-05881, 2017 WL 1093161, at *4-6 (N.D. Ill. 2017) (granting motion to dismiss plaintiff's third amended complaint to the extent that the ADEA claims were time-barred). When the futility of a claim based on these defenses is apparent from the face of a complaint, as it is here, they are appropriate grounds for a Rule 12(b)(6) motion to dismiss. The three cases cited by Plaintiff (Pl.'s Resp. p. 3) are wholly inapposite.[1]

### IV. PLAINTIFF'S NEWLY ASSERTED ALLEGATIONS OF HARASSMENT DO NOT REASONABLY RELATE TO HIS CHARGE OF RACE DISCRIMINATION

Plaintiff agrees that he was required to exhaust his administrative remedies on his Title VII racial harassment claim before filing his lawsuit. (Pl.'s Resp. p. 5). He does not dispute that the First Charge – on which Count II is predicated – does not include a whisper of harassment. (*Id.*). Nor does Plaintiff dispute that the First Charge tied the alleged discrimination to a single date, July 7, 2017. (*Id.*). Instead, Plaintiff attempts to argue that the threadbare allegation in his First Charge that Plaintiff was "falsely accused, suspended and discharged"[2] was sufficient to put

---

[1] *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (affirmative defense of preemption raised in motion to dismiss in products liability medical device case); *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (statute of limitations raised in motion to dismiss in copyright infringement case); *F.D.I.C. v. Kime*, 12 F. Supp. 3d 1113, 1119 (S.D. Ind. 2014) (plaintiff asserted both the existence of a tolling agreement and equitable estoppel in response to statute of limitations argument raised in motion to dismiss in negligence case).

[2] While Plaintiff attempts to rely on his allegation in his Amended Complaint that Jewel employees "**regularly** falsely accused Earl of sleeping on the job . . . [,]" his First Charge does not contain the word

4

Jewel on "fair notice" of a claim for harassment. (*Id.* p. 6). The "reasonable relationship" exception to Title VII's exhaustion requirement cannot be stretched so far. Plaintiff's First Charge relates to purported false accusations of forgery on July 7, 2017 by William Knedler. (*See* Doc. No. 37-2, First Charge of Discrimination ["First Charge"]). In contrast, the Amended Complaint asserts that, "[s]ometime around 2016 and into 2017," Plaintiff was "falsely accused [by Stephen Cohen] . . . of sleeping on the job, being lazy and not doing any work, and eating while working." (Amnd. Compl. ¶ 19). The allegations of harassment in the Amended Complaint, which involve wholly different "false accusations," a completely different manager, and distinct time periods, are not reasonably related to the allegations in the First Charge. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) ("[T]he EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals.").

The sole case cited by Plaintiff on this point does not support his position. (Pl.'s Resp. p. 5). In *Green v. Nat'l Steel Corp.*, the Seventh Circuit held that plaintiff's failure to accommodate claim was <u>not</u> reasonably related to the disability discrimination claim raised in her EEOC charge. 197 F.3d 894, 898 (7th Cir. 1999) ("[O]ne cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability."). Because plaintiff had failed to exhaust her administrative remedies, the Court granted summary judgment to defendant on the failure to accommodate claim. *Id.*

Plaintiff does not even attempt to differentiate his facts from two[3] of the three cases cited in support of Jewel's argument that Plaintiff's newly asserted harassment claims are not

---

"regularly". (*Compare* Amnd. Compl. ¶ 19 *with* First Charge). Without such an adverb, and tying the alleged discrimination to the single date of July 7, 2017, the First Charge does not reasonably suggest that Plaintiff was attempting to complain about a history of false accusations against him during his employment with Jewel.

[3] *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110-12 (7th Cir.1992); *James v. Get Fresh Produce, Inc.*, No. 18 C 4788, 2018 WL 6199003, at *5 (N.D. Ill. Nov. 28, 2018).

5

reasonably related to the claim of race discrimination in his First Charge. And his attempt to distinguish the third case, *Thompson v. Fairmont Chi. Hotel*, fails. In *Thompson*, the charge alleged color discrimination but failed to include any mention of harassment. 525 F. Supp. 2d 984, 990 (N.D. Ill. 2007). Plaintiff then alleged in her complaint that she was subjected to verbal abuse and harassment during her employment. *Id.* at 988. The Court dismissed the harassment claims. *Id.* at 990. In so holding, the Court stated:

> [Plaintiff] might argue that her EEOC charge, by merely claiming that she was "discriminated against" on the basis of her race and national origin, is broad enough to include possible allegations that she was harassed due to her race and national origin and retaliated against for complaining about discrimination on this basis. But the law requires that an EEOC charge "detail" the discriminating conduct . . . Here, the only conduct that [plaintiff's] EEOC charge "details" is that she was discharged. It is not reasonable that an investigation of her discharge would have led to an investigation of other circumstances of her employment (such as harassment or retaliation suffered during her employment).

*Id.* at fn.4 (internal citations omitted). Likewise, here, the First Charge claims that Plaintiff was discriminated against based on his race when he was "falsely accused [of forgery], suspended and discharged" on July 7, 2017. (First Charge). As with the charge in *Thompson*, it is not reasonable that an investigation into these claims arising on July 7, 2017 would have led to an investigation of generalized harassment from other individuals dating back to 2015.

Significantly, Plaintiff fails to respond to Jewel's argument – and therefore concedes – that his purported harassment claims arising earlier than June 7, 2017 (300 days prior to the filing of the April 3, 2018 First Charge) are untimely and must be dismissed. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (a charge filed beyond the 300-day period is untimely and time-barred); *Midwest Generation EME, LLC v. Continuum Chemical Corp.*, 768 F. Supp. 2d 939, 949-950 (N.D. Ill. 2010) (failure to respond to an opposing party's argument

6

implies concession) (collecting cases). Even Plaintiff characterizes the "older factual assertions . . . [as] background information . . . [that] can be ignored." (Pl.'s Resp. p. 6). Therefore, to the extent the Court were to find that any of Plaintiff's harassment allegations were reasonably related to the discrimination claim in his First Charge, which Jewel denies, any claims arising earlier than July 7, 2017 cannot proceed in this lawsuit.

For these reasons, and those asserted in Jewel's Motion, Plaintiff's racial harassment claim in Count II fails as a matter of law and must be dismissed with prejudice.

## V. PLAINTIFF'S RACIAL HARASSMENT CLAIM (COUNTS II-III) IS IMPLAUSIBLE ON ITS FACE

In his Response, Plaintiff altogether fails to address Jewel's argument that he does not state a claim for racial harassment as a matter of law. (Jewel's Memo. p. 7). The Court's inquiry should end there. *See Ennin v. CNH Industrial American, LLC*, 878 F.3d 590, 595 (7th Cir. 2017) ("Failure to respond to an argument generally results in waiver[.]").

Even absent this waiver, however, Plaintiff has not alleged any conduct that plausibly meets the standard for actionable harassment. (*See* Jewel's Memo pp. 7-9). Beyond this, he has failed to connect his allegations of harassment to his race. (*Id.* pp. 8-9). Plaintiff's racial harassment claim must therefore be dismissed with prejudice.

## VI. PLAINTIFF'S AGE DISCRIMINATION AND RETALIATION CLAIMS (COUNTS VIII-IX) BASED ON HIS SECOND CHARGE FAIL AS A MATTER OF LAW

As set forth in Jewel's Motion, the Amended Complaint clearly attempts to assert claims for age discrimination and retaliation based on **both**: (a) the termination of Plaintiff's

7

employment; and (b) Jewel's purported failure to rehire Plaintiff. (Jewel's Memo p. 9; Doc. No. 37-3, Second Charge of Discrimination; Amnd. Compl. ¶¶ 147[4], 157[5]).

Likely recognizing that any such claims based on Plaintiff's July 7, 2017 termination and are undeniably time-barred (*see* Jewel's Memo p. 9), Plaintiff now limits his age discrimination and retaliation claims to Jewel's purported refusal to rehire Plaintiff or offer him any position "**after he lost** his arbitration proceeding" on September 26, 2018[6]. (Pl.'s Resp. p. 7 (emphasis added)). Plaintiff should be bound to his representations to the Court and precluded from future prosecution of any claims in Counts VIII or IX arising earlier than September 26, 2018. *See, e.g.*, *Uncle Henry's Inc. v. Plaut Consulting Co., Inc.*, 399 F.3d 33, 49 (1st Cir. 2005) ("[Plaintiff] made an affirmative representation to the court and opposing counsel, and the district court was entitled to hold [Plaintiff] to it.")

Plaintiff fails to state a plausible claim for failure to rehire between September 26, 2018 and December 18, 2018. In order to state such a claim under Title VII or the ADEA, Plaintiff is required to provide "**that he applied** and was qualified for a job for which the employer was seeking applicants." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (emphasis added); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The plaintiff must prove by a preponderance of the evidence **that she applied for an available position** for which she was qualified, but was rejected under circumstances which give rise to an

---

[4] "Jewel subjected Plaintiff to discriminatory conduct in part due to his age between around July 2017 and present **in that it terminated** or failed to re-hire Plaintiff . . . ." (emphasis added).

[5] "Jewel subjected Plaintiff to discriminatory conduct in part due to his age and in part due to his race between around July 2017 and present **in that it terminated** or failed to re-hire Plaintiff . . . ." (emphasis added). While this paragraph refers to age and race discrimination, it is included under Count IX for Title VII retaliation, and Jewel presumes that Plaintiff's reference to age and race was a typographical error.

[6] September 26, 2018 is the date of the Arbitrator's decision denying Plaintiff's grievance. (Amnd. Compl. ¶ 50).

inference of unlawful discrimination.") (emphasis added); *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1045 (7th Cir. 2000) (plaintiff failed to establish a prima facie case of failure to hire under the ADEA because he never applied to the position he was interested in).

Plaintiff admits that the Amended Complaint fails to allege that Plaintiff reapplied for employment with Jewel, let alone identifies a single instance when Jewel allegedly failed to rehire him. (Pl.'s Resp. p. 7). Nevertheless, h Plaintiff e contends that his failure to rehire claim is viable under Title VII and the ADEA despite his never having reapplied for employment or asked for reinstatement. (*Id.*). Plaintiff cites **no** legal authority for this novel theory of liability. (*Id.* p. 7-8). As a result, he offers the Court no sound basis on which it should deviate from the elements of a claim for failure to hire, as asserted by the Supreme Court and courts in the Seventh Circuit.

## VII. PLAINTIFF CANNOT SALVAGE HIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Plaintiff's claim for intentional infliction of emotional distress ("IIED") cannot survive Jewel's Motion because his allegations do not plausibly rise to the requisite level of "truly extreme and outrageous" conduct.

Plaintiff's IIED claim is premised on his contention that he was falsely accused of "criminal" or "felonious" conduct. (*See* Pl.'s Resp. pp. 8-10). This contention grossly misleads the Court regarding the underlying statements which purportedly give rise to his claim. According to the facts as pled in the Amended Complaint, Plaintiff's supervisor William Knedler sent a letter to more than five of Plaintiff's co-workers that stated: "[Plaintiff] had produced a document that did not match the original document used to select vacation and personal days." (Amnd. Compl. ¶¶ 118, 121). Knedler then stated that he "had not authorized [Plaintiff] to take Monday, June 5, 2017 as an extra day." (Amnd. Compl. ¶ 122). Notably *absent* from these

alleged statements is any accusation of "criminal" or "felonious" conduct. In fact, Knedler's alleged statements do not even suggest that *Plaintiff* modified the non-matching vacation form he produced. Such a neutral statement is nowhere near the "truly extreme and outrageous" conduct that can give rise to an IIED claim in the employment context under Illinois law. *See, e.g.*, *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (holding that conduct was not extreme and outrageous where plaintiff was prohibited from supervising white employees, unfairly criticized, excluded from office activities and decisions, forced out of a management position and denied a promised promotion, and had her calls monitored and her car vandalized); *Tabora v. Gottlieb Mem'l Hosp.*, 279 Ill.App.3d 108, 120 (1st Dist. 1996) (affirming dismissal where plaintiff doctor alleged that the defendants engaged in a five-year campaign of harassment and intimidation by falsely claiming that he was incompetent, revoking his privileges, and constantly berating him in front of hospital staff).

Plaintiff's attempt to distinguish *Thomas v. Coach Outlet Store* from the facts of his own case fails. (Pl.'s Resp. p. 10). In *Thomas*, the alleged wrongdoer *did* explicitly accuse plaintiff of having "stolen something from the store." *Thomas v. Coach Outlet Store*, No. 16-C-3950, 2017 WL 386656, at *1 (N.D. Ill. Jan. 27, 2017). Beyond this, though, the manager "physically patted down [plaintiff] and roughly searched through her belongings, holding up [plaintiff's] intimate apparel and other items in front of people in the store." *Id.* (internal quotations omitted). Nevertheless, the Court still held that neither the false accusation of criminal conduct[7]

---

[7] Plaintiff's position that *Thomas* did not involve "felonious" conduct, and is therefore distinguishable, is unfounded. (Pl.'s Resp. p. 10). Both theft (the alleged illegal activity in *Thomas*) and forgery (in Plaintiff's case) are considered felonies under Illinois law. Property theft can be classified up to a Class X felony under Illinois law, whereas the most serious crime of forgery is only considered a Class 2 felony. *Compare* 720 ILCS 5/16-1(b) (theft) *with* 720 ILCS 5/17-3(d)(1) (forgery). The Court can take judicial notice of the Illinois criminal law statutes. Fed. R. Evid. 201(b)(2). *Cf. U.S. v. Arroyo*, 310 Fed. Appx. 928, 929-930 (7th Cir. 2009) (judicial notice applies to statutes, such as drug classification under the federal law).

nor the pat-down and search rose to the level of "extreme and outrageous" conduct and dismissed the IIED claim pursuant to Rule 12(b)(6).[8] *Id.* at *5. In reaching its decision, the Court held: "**False accusations of illegal activity** or poor work performance do **not** give rise to a claim for intentional infliction of emotional distress, even when those accusations are made to third parties." *Id.* (emphasis added) (citing cases). The Court's rationale and holding in *Thomas* supports dismissal of Plaintiff's IIED claim here.

Plaintiff does not cite to a single case in which a statement similar to Knedler's was considered to be sufficient to trigger a claim for IIED under Illinois law. His IIED claim must be dismissed.

## VIII. PLAINTIFF'S SECTION 301 CLAIM IS DEFICIENT AS A MATTER OF LAW

Despite Plaintiff's attempt to salvage his hybrid Section 301 claim, it remains fatally deficient because: (a) Plaintiff's conclusory and unfounded complaints about the Union's handling of his grievance do not plausibly suggest that the Union acted irrationally or in egregious disregard of his rights; and (b) Plaintiff has not plead sufficient facts to support his claim that Jewel violated the CBA.

Plaintiff's argument that the Union breached its duty of fair representation is circular. He believes the Union's conduct was discriminatory. (Pl.'s Resp. p. 10). He then jumps to the conclusion that "[d]iscrimination is inherently arbitrary." (*Id.*). This wholly fails to meet the Seventh Circuit's requirement set forth in *Yeftich v. Navistar, Inc.* that assertions regarding the Union's state of mind (here, that it was allegedly motivated by racial discrimination) must be

---

[8] In his Response, Plaintiff asserts that the IIED claim in *Thomas* was "dismissed *without prejudice*" (Pl.'s Resp. p. 10) but it is wholly unclear from where he obtains that information. The *Thomas* decision does not specify whether the dismissal of the IIED claim was with, or without prejudice. Jewel was equally unable to ascertain from the case docket whether the IIED claim was dismissed with, or without, prejudice. The Court simply stated: "Count IV is thus dismissed." *Thomas*, 2017 WL 386656, at *5.

11

supported with subsidiary facts. 722 F.3d 911, 916 (7th Cir. 2013). In fact, Plaintiff offers far fewer facts regarding the Union's state of mind than the plaintiff did in *Yeftich* and, in that case, the court dismissed the Section 301 claim as implausible. *Id.* at 917. Indeed, Plaintiff offers nothing but superficial conclusions about the Union's motives rather than pointing to specific actions by the Union that plausibly shows that its conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Plaintiff's conclusory allegations are entirely insufficient to pierce the "substantial discretion" generally enjoyed by the union in fulfilling its duties. *Yeftich*, 722 F.3d at 917.

Plaintiff's attack on the Union's handling of his grievance is also inadequate to give rise to a viable Section 301 claim. In his Response, Plaintiff concedes that: (a) the Union grieved his termination; and (b) the Union pursued the grievance through arbitration. (Pl.'s Resp. p. 12-13). He now second-guesses the strategy employed by the Union during the arbitration proceedings. But he must show more than an error in judgment or mere negligence to survive Jewel's Motion. *See, e.g.*, *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003) ("mere negligence" by union officials is not sufficient). While he may strongly disagree with the Union's strategic decisions in the arbitration, he does not identify any conduct by the Union "so far outside a wide range of reasonableness" as to implicate liability against the Union here. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). Significantly, Plaintiff's Response does not cite to a <u>single</u> case to support his contention that the conduct of which he accuses the Union is so irrational and egregious that it amounts to a plausible breach of the Union's duty of fair representation. Because Plaintiff's Section 301 claim against Jewel is inextricably interdependent with Plaintiff's parallel claim against the Union, the Court's inquiry can begin and end there.

Even assuming, *arguendo*, Plaintiff could show a plausible breach of the duty of fair representation by the Union, he still has not plausibly alleged that Jewel breached the CBA. First, the Amended Complaint broadly claims that Jewel "breached material terms of the Union Agreement." (Amnd. Compl. ¶ 58). It neither attaches the CBA nor cites to a single provision of the agreement which Plaintiff claims was breached. And even though Jewel attached the CBA to its Motion, Plaintiff's Response still does not cite to a single provision in the CBA which he claims Jewel breached. (Pl.'s Resp. p. 14). Such a barebones claim against Jewel should not be permitted to proceed.

In addition, Plaintiff's Section 301 claim against Jewel is untimely. As pled in the Amended Complaint, Plaintiff's Section 301 claim solely relates to Plaintiff's termination, grievance, and the ensuing arbitration. (*See* Amnd. Compl. ¶¶ 55-71). His allegations against Jewel are very clearly tied to his July 7, 2017 discharge. (*Id.*). Plaintiff's Section 301 claim against Jewel was therefore brought outside the applicable six-month filing period, and is untimely. (Jewel's Memo. pp. 17-18). In an attempt to save this claim from dismissal, Plaintiff now claims that his Section 301 claim against Jewel was also based upon an alleged series of "failures to rehire" following the September 26, 2018 arbitration decision. (Pl.'s Resp. p. 15). None of the allegations in Count I support such a reading. (Amnd. Compl. ¶¶ 55-71). Plaintiff should not now be permitted to broaden the scope of his Section 301 claim. Regardless, a failure to rehire claim under Section 301 would still fail because Plaintiff has not plausibly alleged how Jewel's failure to rehire him after the arbitration proceeding (when Plaintiff admittedly never reapplied for employment or asked for reinstatement) would have violated the terms of the CBA.

Finally, contemporaneous with Jewel's Motion, the Union filed a Motion for Judgment on the Pleadings setting forth its own reasoning as to why Plaintiff's Section 301 claim is

deficient. (*See* Doc. No. 39, Local 710's Motion for Judgment on the Pleadings). To the extent the Court finds the Union's arguments persuasive, and grants the Union's Motion with regard to Count I, Plaintiff's Section 301 claim against Jewel must be dismissed as well.

## IX. CONCLUSION

WHEREFORE, Defendant Jewel Food Stores, Inc. respectfully requests that this Court enter an Order granting its Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 36] and dismiss Plaintiff's claims with prejudice, and further requests that it be granted such other relief as deemed appropriate by the Court.

Dated: May 31, 2019

Respectfully submitted,

JEWEL FOOD STORES, INC.

By: */s/ Stephanie L. Mills-Gallan*
One of Its Attorneys

Jennifer Schilling
Stephanie L. Mills-Gallan
Littler Mendelson, P.C.
321 North Clark Street, Suite 1000
Chicago, IL 60654
Telephone: 312.372.5520
Facsimile: 312.372.7880
*jschilling@littler.com*
*smillsgallan@littler.com*

14

## CERTIFICATE OF SERVICE

Stephanie L. Mills-Gallan, an attorney, hereby certifies that, on May 31, 2019, she caused the foregoing ***Defendant Jewel Food Stores, Inc.'s Reply in Support of Its Partial Motion to Dismiss Plaintiff's Amended Complaint*** to be filed electronically with the Clerk of the Court, using the court's CM/ECF system. Notification of such filing will be sent to the following counsel of record:

Eric Onyango
Prime Legal, LLC
222 North Columbus Drive, Suite 1507
Chicago, IL 60601
*e@primelgl.com*

Maudia N. Washington
Washington Law Offices
155 N. Wacker Drive, Suite 4250
Chicago, IL 60606
*maudia@ilwashingtonlaw.com*

*Attorneys for Plaintiff*

Linda M. Martin
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
*lmartin@wwdlaw.com*

*Attorney for Defendant Highway Drivers, Dockmen, Spotters, Rampmen, Meat Packing House, and Allied Products Drivers and Helpers, Office Workers, and Miscellaneous Employees, Local Union No. 710*

      */s/ Stephanie L. Mills-Gallan*
      Stephanie L. Mills-Gallan

FIRMWIDE:164596555.1 093117.1008