# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |  |
|---|---|---|
| BILLY EARL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 8279 |
| | ) | |
| JEWEL FOOD STORES, INC., and | ) | |
| HIGHWAY DRIVERS, DOCKMEN, | ) | |
| SPOTTERS, RAMPMEN, MEAT, | ) | |
| PACKING HOUSE, AND ALLIED | ) | |
| PRODUCTS DRIVERS AND HELPERS, | ) | |
| OFFICE WORKERS AND | ) | |
| MISCELLANEOUS EMPLOYEES | ) | |
| LOCAL UNION NO. 710, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Jewel Food Stores, Inc.'s ("Jewel") motion to dismiss Plaintiff Billy Earl's ("Earl") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Defendant Highway Drivers, Dockmen, Spotters, Rampmen, Meat, Packing House, and Allied Products Drivers and Helpers, Officer Workers and Miscellaneous Employees Local Union No. 710's ("Local 710") (collectively, "Defendants") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the Court grants both motions.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Earl's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff Earl is an African American male who resides in Cook County, Illinois. From September 1988 until July 7, 2017, Earl was employed by Defendant Jewel, a supermarket chain with its principal place of business in Boise, Idaho. As part of his employment, Earl belonged to Local 710, the sole and exclusive bargaining agent of Jewel employees engaged in warehousing operations at Jewel's warehouses in Melrose Park, Illinois. At all relevant times, Earl's employment was governed by a collective bargaining agreement between Local 710 and Jewel.

In his most recent role at Jewel, Earl worked in the Maintenance and Sanitation Department as a Recoup Worker in Melrose Park, Illinois. Stephen Cohen ("Cohen"), William Knedler ("Knedler"), and Fred Casey ("Casey"), all Caucasian men, were among Earl's supervisors.

Between 2016 and 2017, Earl alleges that "Cohen regularly falsely accused Earl of sleeping on the job, being lazy, and not doing any work, and eating while working." Earl noted that Cohen did not direct similar comments to non-African American employees.

According to the amended complaint, Jewel employees were allowed to briefly leave the warehouse during winter months to heat up their cars before the end of their shift. Earl alleges that Cohen and Casey would admonish him for leaving to heat up his car but would not admonish non-African American employees that did so.

Around 2016 or 2017, Earl's union representatives warned him that Knedler, Cohen, Casey, and other Jewel supervisors "were determined to force him out of his employment at Jewel." Casey would allegedly ask Jewel managers during meetings when they intended to dismiss Earl. These collective activities led Earl to report racial discrimination to Local 710. However, according to the amended complaint, Local 710 did not investigate or take any further action regarding Earl's claims.

Despite his concerns, Earl remained in Jewel's employ and subject to the collective bargaining agreement. According to the agreement, "union members had the right to take an extra day off if a holiday fell within the employee's vacation period, and the employee properly notified Jewel in advance of his intention to take the day off." Earl regularly selected vacation and personal holidays that he wished to take off and would submit those dates to his supervisor for approval using the standard vacation request form. Earl indicated his intent to take an extra day off during a holiday period by indicating "Ex. Day" next to each relevant vacation week that he requested.

In 2016, Earl attempted to utilize this policy to request off July 5, 2016, however, Jewel denied Earl's request. Unaware that his time off was not approved, Earl took off on July 5, 2016. Jewel issued Earl a warning for this incident because he did not call

3

the company prior to his unapproved absence, which they considered a "No Call/No Show."

On February 1, 2017, Earl selected his vacation days for the year, including the week ending on June 2, 2017. As May 29, 2017 was a holiday, Earl elected to take off June 5, 2017 by marking "Ex. Day" on his vacation request form. According to the amended complaint, Knedler approved Earl's request on February 6, 2017. Jewel manager Dan Carol ("Carol") gave Earl three photocopies of his approved vacation request form, signed by Knedler.

Earl did not show up for work on June 5, 2017, believing that his requested time off was approved. The following day at work, Earl was called into a meeting with Jewel employees Gary Michelini ("Michelini") and Chuck Blanton ("Blanton") and Local 710 representative Al Wiegel ("Wiegel") to discuss his absence, which they characterized as his second "No Call/No Show."

On June 16, 2017, Earl attended another meeting with Local 710 representative Jimmy Bradford ("Bradford"), Knedler, and Jewel employee Chris Herrick ("Herrick"). At the meeting, Knedler claimed that he did not authorize Earl's time off on June 5, 2017. In response, Earl produced a copy of the approved vacation request form that Casey handed to him in February. Knedler claimed that the original document in his office did not match Earl's copy. Bradford viewed the document in Knedler's office and "informed Earl that parts of it appeared to have been erased using a correction fluid or similar material."

On June 29, 2017, Jewel suspended Earl without pay and accused him of falsifying a company record. On July 7, 2017, Jewel terminated Earl's employment, causing Local 710 to file a grievance on Earl's behalf. The grievance proceeded to arbitration on July 13, 2018, during which attorney Laurence Goodman ("Goodman") represented Local 710.

On September 26, 2018, arbitrator Brian Clauss ("Clauss") issued a decision denying Local 710's grievance of Earl's termination. Clauss concluded that the accurate copy of the approved vacation request form was that produced by Knedler, not the copy produced by Earl. On November 28, 2018, Local 710 mailed a copy of the arbitration decision to Earl. Earl asked to return to his job at Jewel or a substantially similar position in February 2019, but he has not been re-hired.

While the grievance process progressed, Earl filed a charged against Jewel and Local 710 with the Equal Employment Opportunity Commission ("EEOC") on April 3, 2018, claiming race discrimination. On September 24, 2018, the EEOC issued Earl a right to sue letter regarding his charges against Jewel. On February 5, 2019, the EEOC did the same regarding Earl's charges against Local 710. Earl filed a second charge with the EEOC on December 18, 2018, alleging continued retaliation and age discrimination. The EEOC issued Earl a third right to sue letter for the claims in his second charge on February 14, 2019.

Based on these events, Earl filed his initial complaint on December 18, 2018, alleging various counts of racial discrimination, retaliation, breach of duty of fair

representation, and breach of collective bargaining agreement, among others. Earl amended his complaint on April 12, 2019 to include additional claims of race and age discrimination. On May 2, 2019, Jewel filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The following day, Local 710 filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Earl need not provide detailed factual allegations, but he must provide enough factual support to raise his right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). However, in evaluating a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, and any written instruments attached as exhibits." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

## DISCUSSION

Earl's amended complaint sets forth several claims against the Defendants, including: (Count I) a hybrid claim under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.*, for breach of the duty of fair representation against Local 710 and breach of the collective bargaining agreement against Jewel; (Count II) a race discrimination claim under Title VII against Jewel; (Count III) a race discrimination claim under 42 U.S.C. § 1981 against Jewel; (Count IV) a retaliation claim under 42 U.S.C. § 1981 against Local 710 and Jewel; (Count V) a failure to provide notice claim under 29 U.S.C. § 1166 against Jewel; (Count VI) an intentional infliction of emotional distress claim against Jewel; (Count VII) a race discrimination claim under Title VII against Local 710; (Count VIII) an age discrimination claim under the Age Discrimination in Employment Act ("ADEA") against Jewel; and (Count IX) a retaliation claim under Title VII against Local 710 and Jewel.

Jewel moves the Court to dismiss Counts I, VI, VIII, and IX in whole and Counts II and III in part. Local 710 moves the Court for a judgment on the pleadings with respect to Counts I, III, IV, VII, and IX. The Court addresses each disputed count in turn.

**I. Count I—Section 301 Hybrid Claim**

To state a hybrid claim under Section 301 of the LMRA, Earl must allege both a breach of the collective bargaining agreement by Jewel and a breach of the duty of fair representation by Local 710. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983). Earl must succeed in both claims to prevail, as "the two claims are inextricably interdependent." *Id.* at 164 (internal quotation marks omitted). The Defendants assert that Earl has insufficiently plead both claims, but if even one fails then both claims must be dismissed.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013). An action is arbitrary if it "is so far outside a wide range of reasonableness as to be irrational." *Id.* at 917. Conduct is in bad faith if "the union acted (or failed to act) due to an improper motive." *Id.* at 916. Further, "the union enjoys substantial discretion in fulfilling its duty of fair representation," because "Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative." *Id.* at 916–917. Thus, courts have been deferential to union decisions when determining whether those

actions constituted a breach of the duty of fair representation. *See Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) ("Courts should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call.").

Earl alleges that Local 710 breached its duty of fair representation in two ways: (1) by failing to grieve discriminatory conduct that occurred from 2015 to 2017, and (2) by handling his termination-related grievance in a perfunctory manner. Regarding the first allegation, Earl does not sufficiently plead that a breach occurred. He does not state when or to whom he complained of discriminatory conduct. Without a factual foundation, Local 710 does not have sufficient grounds on which to defend.

Regarding the second allegation, Earl claims that Local 710 mishandled his grievance by not presenting testimony from a document expert or Jewel employees that could affirm his vacation request form was not falsified. He also complains that Local 710 did not present his past vacation request forms as corroborating evidence to show how he usually requested time off. Finally, Earl states that Local 710 should have asserted that Earl did not have access to Knedler's office where the original document was stored. However, the Seventh Circuit has held that strategic decisions such as this do not rise to the level of unfair representation. *Cannon v. Consol. Freightways Corp.*, 524 F.2d 290, 294 (7th Cir. 1975) ("At most, the failure to raise the defense was an act of neglect or the product of a mistake in judgment. However, proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of

9

unfair representation."); *See also Garcia*, 58 F.3d at 1177 ("Perhaps the ideal strategy would have been to interview [the witness], but the Union is not held to such a high standard here. We must defer to the Union's strategic choices unless they are irrational, discriminatory or in bad faith, and [the Union's] actions were none of the above."). Given this precedent and the Court's eye toward union deference, we find that Earl did not state a claim for breach of the duty of fair representation. Absent this claim, Count I must be dismissed.

## II. Count II—Title VII Racial Harassment Claim

To file a lawsuit under Title VII, a plaintiff must first file a charge with the EEOC describing the alleged employment discrimination. 42 U.S.C. § 2000e-5. A plaintiff may not bring Title VII claims that were excluded from the EEOC charge. *Sitar v. Indiana Dept. of Trans.*, 344 F.3d 720, 726 (7th Cir. 2003). An exception to this rule arises for claims that are "reasonably related" to those included in the EEOC charge, meaning that the claims can be "expected to grow out of an EEOC investigation of the charges." *Id.* To be reasonably related, there must be a factual relationship between the claims and, "at a minimum, describe the same conduct and implicate the same individuals." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). As such, "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

The Seventh Circuit has affirmed that harassment charges are not reasonably related to discrimination charges under Title VII. *Cheek*, 31 F.3d at 503 (holding that harassment claim was not reasonably related to discrimination claim in EEOC charge); *Rush*, 966 F.2d at 1111–12 (finding that racial harassment claim was not reasonably related to claim of racial discrimination based on termination). This principle governs in Earl's case, where his EEOC charge was limited to a race discrimination claim based on being "falsely accused, suspended, and discharged" on July 7, 2017. Earl's charge does not mention harassment based on race and does not span the time frame prior to the day of his termination. Therefore, Count II is dismissed with respect to the racial harassment claims.[1]

### III. Count III—Section 1981 Racial Harassment Claim

Earl next alleges that he was subjected to racial harassment and a hostile work environment based on his race, as prohibited by Section 1981.[2] To properly allege these claims, Earl must assert that the Defendants' conduct was sufficiently severe and had a racial character or purpose.

Regarding severity, the Seventh Circuit "has on many occasions distinguished between harassing and merely objectionable conduct." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007). "[M]inor or isolated incidents are generally

---

[1] The Defendants also argue that Count II should be dismissed because the pleadings are insufficient to allege racial harassment. For the reasons stated in Section III, the Court agrees.
[2] "Discrimination claims under both Title VII and § 1981 are analyzed in the same manner." *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002). Accordingly, the Court cites to both Section 1981 and Title VII precedent.

insufficient to rise to the level of objectively offensive conduct." *Id.* In short, "[o]nly a hellish workplace is actionable as a hostile work environment." *Holmes v. Hous. Auth. of Joliet*, 2015 WL 1826676, at *5 (N.D. Ill. 2015) (internal quotation marks omitted). The Court adopted these demanding standards "to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

Earl alleges that he was reprimanded for leaving prior to the end of his shift during the winter time to start his car and was falsely accused of sleeping, eating, and being lazy at work. He also notes that he was suspended without pay for turning down the volume on speakers in his work area. However, courts in this circuit have held that allegations of this kind do not rise to the level of harassment necessary for a hostile work environment. *See Pearson v. Advocate Health Care*, 2017 WL 3478815, at *6 (N.D. Ill. 2017) (finding that plaintiff did not allege a hostile work environment where employer unfairly reprimanded her, called her ignorant, and refused her preferred vacation schedule); *See also Bowden v. Kirkland & Ellis LLP*, 2010 WL 3526483, at *12 (N.D. Ill. 2010) (finding that allegations of unfair criticism by superiors and receipt of unfavorable work assignments did not constitute a hostile work environment). Earl's allegations, even when construed in the most favorable light, cannot be deemed a hellish workplace and are therefore insufficiently severe.

Regarding the racial component of his claims, Earl does not have to allege that the Defendants' conduct was "explicitly racial," but he "must show that the conduct has

a racial character or purpose." *Lilly v. Roadway Express, Inc.*, 6 Fed.Appx. 358, 359 (7th Cir. 2001). The Seventh Circuit has held that "[t]here is no inherently racial component to an employer providing an employee with a critical (even an unfairly critical) performance review...." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). Moreover, "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Id.* at 863. Indeed, the alleged conduct "must be sufficiently connected to race before it may reasonably by construed as being motivated by the defendant's hostility to the plaintiff's race." *Id.* at 863–64.

Earl alleges that Jewel had a racial character or purpose because his supervisors' comments "embod[y] negative generalizations and stereotypes about African Americans in the United States culture." He also alleges that Local 710 had a racial character or purpose in failing to grieve his discrimination complaints. However, both of these assertions are devoid of a credible racial connection. Given that supervisor criticism, without more, is not a racial commentary, the allegations against Jewel lack the requisite racial character or purpose. Absent the conclusory statement that Local 710's actions were motivated by race, Earl's amended complaint makes no attempt to assert a racial character or purpose on behalf of the union. Accordingly, those allegations fare no better than those against Jewel. Therefore, Count III is dismissed with respect to the harassment and hostile work environment claims.

**IV. Count IV—Section 1981 Retaliation Claim**

Earl claims that Local 710 retaliated against him by failing to appropriately pursue his racial discrimination grievance after he filed an EEOC charge against them.[3] Earl asserts that Local 710 did not investigate the circumstances of his termination or present evidence at the arbitration hearing to disprove Jewel's assertions of forgery. Earl also alleges that Local 710 retaliated against him by not assisting in his efforts to get re-hired by Jewel.

"To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal link between the two." *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018). Earl satisfies the first prong because his EEOC filing is a protected activity. Further, the arbitration decision upholding Earl's termination and the failure to assist Earl's efforts to be re-hired could plausibly be construed as adverse employment actions. However, the Court has concerns with respect to the connection between those allegations. Given that the amended complaint insufficiently alleges the third prong of retaliation, the Court dismisses Count IV as to Local 710.

---

[3] Earl alleges Count IV against both of the Defendants, however, Jewel is not moving to dismiss this count. Thus, the Court only considers the arguments with respect to Local 710.

## V. Count VI—Intentional Infliction of Emotional Distress Claim

In his amended complaint, Earl claims that Knedler published a letter to at least five of Earl's co-workers explaining the rationale for Earl's dismissal. In his explanation, Knedler included Earl's alleged alteration of his vacation request form. In the letter, Knedler wrote "Earl produced a document that did not match the original document used to select vacation and personal days." Based on these statements, Earl claims that Knedler intentionally inflicted emotional distress on him by accusing him of forgery and broadcasting that accusation to his co-workers.

To succeed on an intentional infliction of emotional distress claim, Earl must demonstrate three things:

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.

*Simkus v. United Air Lines, Inc.*, 2012 WL 3133603, at *2 (N.D. Ill. 2012) (quoting *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 (Ill. 2003)). To constitute extreme and outrageous behavior, the defendant's conduct must "go beyond all possible bounds of decency and…be regarded as intolerable in a civilized community." *Feltmeier*, 207 Ill.2d at 80–81. "Illinois case law makes clear that under no circumstances would mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities qualify as outrageous conduct." *Id.* at 80 (internal quotation marks omitted).

In the employment setting, courts are hesitant to find a claim for intentional infliction of emotional distress. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. 2000). "Courts are concerned that, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Id*. Accordingly, "Illinois courts have found behavior in the workplace to rise to the level of extreme and outrageous conduct only when the behavior is truly egregious." *Thomas v. Coach Outlet Store*, 2017 WL 386656 (N.D. Ill. 2017) (dismissing a claim for intentional infliction of emotional distress when an employer falsely accused a plaintiff of theft, searched her belongings in front of her co-workers, and patted her down); *See also Harrison v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming district court's dismissal of intentional infliction of emotional distress claim where African American employee was not allowed to supervise white subordinates, was reprimanded without reason, was threatened with discipline, and was forced out of a management position).

With these principles in mind, the Court finds that Earl has not sufficiently stated a claim for intentional infliction of emotional distress. Even construing all reasonable inferences in Earl's favor, Knedler's conduct does not rise to the necessary level of egregiousness. As this District has held, "[f]alse accusations of illegal activity or poor work performance do not give rise to a claim for intentional infliction of emotional

16

distress, even when those accusations are made to third parties." *Thomas*, 2017 WL 386656, at *5. Accordingly, Count VI is dismissed.

**VI. Count VII—Title VII Race Discrimination Claim**

Next, Earl alleges that Local 710 racially discriminated against him by failing to advocate for his re-hiring, in violation of Title VII. Under that statute, "a union may not...refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities on account of his race." *Lugo v. Int'l Bhd. of Elec. Worker Local #134*, 2017 WL 1151019, at *4 (N.D. Ill. 2017). While Earl has alleged that Local 710 would not advocate for his re-hiring, he does not plausibly allege that the union's actions were impacted or motivated by Earl's race. Indeed, the racial connection is the underpinning to any racial discrimination claim. Therefore, Count VII is dismissed.

**VII. Counts VIII and IX—Age Discrimination and Title VII Retaliation Claim**

*A. Timeliness of Claims*

The parties next dispute whether Earl's age discrimination and Title VII retaliation claims were timely filed. To properly file a discrimination or retaliation suit, a plaintiff has 300 days from the occurrence to file a charge with the EEOC. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). If a charge is not filed during that time period, the claim is barred. *Id.*

The Defendants state that Earl's age discrimination and retaliation claims arising from his termination and Jewel's subsequent refusal to re-hire him should have been

brought within 300 days of his termination on July 7, 2017. Earl did not file his second EEOC charge until December 2018. However, Earl notes that these claims stemmed from the loss of his arbitration proceeding, which did not occur until September 2018. Therefore, the Court agrees that Earl's age discrimination and retaliation claims were timely filed.

### B. *Sufficiency of Pleadings*

Earl faces a more significant problem with respect to the sufficiency of the allegations relating to his age discrimination and Title VII retaliation claims. In his responsive pleading, Earl states that the gist of these claims is that "younger employees who lost their arbitration proceedings were rehired or offered other positions while Earl was not." To make out a *prima facie* case for failure to re-hire, Earl needs to allege "that he applied and was qualified for the positions." *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1045 (7th Cir. 2000). In his amended complaint, Earl does not allege a single instance where he re-applied for employment with Jewel prior to filing his second EEOC charge. Accordingly, the pleadings are insufficient, and the Court dismisses Counts VIII and IX.

## **CONCLUSION**

For the aforementioned reasons, the Court grants the Defendants' motion to dismiss and motion for judgment on the pleadings. The Court also grants Earl's request for leave to amend his complaint consistent with this opinion. It is so ordered.

Dated: 7/02/2019

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge